PAUL L. REIN, Esq. (SBN 43053)
CELIA McGUINNESS, Esq. (SBN 159420)
LAW OFFICES OF PAUL L. REIN
200 Lakeside Drive, Suite A
Oakland, CA 94612
Telephone: 510/832-5001
Facsimile: 510/832-4787
reinlawoffice@aol.com

Attorneys for Plaintiff
PATRICIA BERNE

MICHAEL D. BRUNO (SBN 166805)
GORDON & REES LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054
mbruno@gordonrees.com

Attorneys for Defendant
THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA BERNE,<br><br>             Plaintiff,<br><br>vs.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; DOES 1 through 10, inclusive,<br><br>             Defendant. | CASE NO. C11-00809 DMR<br>Civil Rights<br><br>**CONSENT DECREE AND [PROPOSED] ORDER**<br><br>**Pursuant to General Order 56** |

1. Plaintiff PATRICIA BERNE filed a Complaint in this action on February 22, 2011 to obtain recovery of damages for her alleged discriminatory experiences, denial of access, and denial of her civil rights, and to enforce provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. sections 12101 et seq., and California civil rights laws against Defendant The REGENTS OF THE UNIVERSITY OF CALIFORNIA relating to the condition of its public accommodations as of March 4, 2009, and continuing. Plaintiff has alleged that Defendants violated Title III of the ADA and sections 51, 52, 54, 54.1, 54.3 and 55 of the California Civil Code, and sections 19955 et seq. of the California Health & Safety Code by failing to provide full and equal access to their facilities at Zellerbach Hall Auditorium, located on the University of California campus at Berkeley, California.

2. Defendant The REGENTS OF THE UNIVERSITY OF CALIFORNIA denies the allegations in the Complaint and by entering into this Consent Decree and Order does not admit liability for any of the allegations in Plaintiff's Complaint filed in this action. Plaintiff and defendant, hereinafter collectively, "the parties," hereby enter into this Consent Decree and Order for the purpose of resolving this lawsuit without the need for protracted litigation and without the admission of any liability.

**JURISDICTION:**

3. The parties to this Consent Decree agree that the Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1331 for alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101 et seq., and pursuant to supplemental jurisdiction for alleged violations of California Health & Safety Code sections19955 et seq.; Title 24, California Code of Regulations; and California Civil Code sections 51, 52, 54, 54.1, 54.3, and 55.

4. In order to avoid the costs, expense, and uncertainty of protracted litigation, the parties to this Consent Decree agree to entry of this Order to resolve all claims regarding injunctive relief, damages, and attorney fees, litigation expenses, and costs, raised in the Complaint filed with this Court. Accordingly, they agree to the entry of this Order without trial or further adjudication of any issues of fact or law concerning Plaintiff's claims for injunctive

| 1 | relief. Issues of damages, and attorney fees, litigation expenses, and costs have not been |

relief. Issues of damages, and attorney fees, litigation expenses, and costs have not been resolved and will be the subject of further negotiation and/or litigation.

WHEREFORE, the parties to this Consent Decree hereby agree and stipulate to the Court's entry of this Consent Decree and Order, which provides as follows:

**SETTLEMENT OF INJUNCTIVE RELIEF:**

5. This Order shall be a full, complete, and final disposition and settlement of Plaintiff's claims against Defendant for injunctive relief that have arisen out of the subject Complaint. The parties agree that there has been no admission or finding of liability or violation of the ADA and/or California civil rights laws, and this Consent Decree and Order should not be construed as such.

6. The parties agree and stipulate that the corrective work will be performed in compliance with the standards and specifications for disabled access as set forth in the California Code of Regulations, Title 24 2, and the Americans with Disabilities Act Accessibility Standards, unless other standards are specifically agreed to in this Consent Decree and Order.

7. Remedial Measures: Defendants agree to perform corrective work at the Zellerbach Hall Auditorium, where, Berkeley, California. The scope of the corrective work, and the schedule for it, agreed upon by the parties is delineated in Attachment A. As indicated, defendant represents some of the work has already been completed. Defendant shall provide a a status report to plaintiff's counsel 180 days after this Consent Decree is signed by the Court. Thereafter, defendant will provide status reports every 180 days until the remedial measures are constructed.

8. Timing of Injunctive Relief: The parties shall complete the corrective work on the schedule delineated in Attachment A. In recognition of the comprehensive construction project known as the Lower Sproul Plaza Renovation, the parties acknowledge that completing the work set forth in Attachment A prior to December 31, 2013 may be unreasonably difficult or inefficient, and that the schedule may need to be redirected. In the event that such difficulties prevent Defendant from completing any of the agreed upon injunctive relief by the end of 2013, Defendant or its counsel will notify Plaintiff's counsel in writing within 15 days of discovering

such a circumstance. This communication shall contain an explanation for the delay and propose an extension of time within which the work shall be completed. Plaintiff's counsel shall consider the reasons stated, as well as the proposed extension, and respond in writing. Within 15 days of plaintiff's writing, the parties shall confer by phone. If the parties are unable to reach an agreement through this process, Defendant shall be entitled to make a motion to the Court requesting an extension of this deadline. Nothing in this Consent Decree shall prevent plaintiff's counsel from demanding payment of reasonable attorney fees incurred in connection with a request from defendant for additional time to complete the remedial measures set forth in Exhibit A.

**DAMAGES:**

9. The parties have not yet reached an agreement regarding Plaintiff's monetary claims for damages.

**ATTORNEY FEES, LITIGATION EXPENSES AND COSTS:**

10. No agreement has been reached yet on these issues. They will be the subject of further negotiation and/or litigation. The parties jointly stipulate and request that the Court not dismiss the case as these significant issues remain unresolved.

**ENFORCEMENT:**

11. If Defendant fails to perform the injunctive relief, or fails to perform in the time frame stated and the parties cannot come to a negotiated resolution through the mechanism set forth in paragraph 8, Defendants will pay all plaintiff's reasonable fees, litigation expenses and costs involved in enforcing this agreement.

**ENTIRE CONSENT ORDER:**

12. This Consent Decree and Order and Attachment A to this Consent Decree and Order, which is incorporated herein by reference as if fully set forth in this document, constitute the entire agreement between the signing parties on the matters of injunctive relief. Issues of damages and attorney fees, litigation expenses, and costs are specifically excluded and shall be the subject of further negotiations and/or litigation.

**CONSENT ORDER BINDING ON PARTIES AND SUCCESSORS IN INTEREST:**

13. This Consent Decree and Order shall be binding on the parties and all successors in interest. The parties have a duty to so notify all such successors in interest of the existence and terms of this Consent Decree and Order during the period of the Court's jurisdiction of this Consent Decree and Order.

**MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS TO INJUNCTIVE RELIEF ONLY:**

14. Each of the parties to this Consent Decree understands and agrees that there is a risk and possibility that, subsequent to the execution of this Consent Decree, any or all of them will incur, suffer or experience some further loss or damage with respect to the lawsuit which are unknown or unanticipated at the time this Consent Decree is signed. Except for all obligations required in this Consent Decree, the parties intend that this Consent Decree apply to all such further loss with respect to the lawsuit, except those caused by the parties subsequent to the execution of this Consent Decree. Therefore, except for all obligations required in this Consent Decree, this Consent Decree shall apply to and cover any and all claims, demands, actions and causes of action by the parties to this Consent Decree with respect to the lawsuit, whether the same are known, unknown or hereafter discovered or ascertained, and the provisions of Section 1542 of the California Civil Code are hereby expressly waived. Section 1542 provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

15. Except for all obligations required in this Consent Decree, each of the parties to this Consent Decree, on behalf of each, their respective agents, representatives, predecessors, successors, heirs, partners and assigns, releases and forever discharges each other Party and all officers, directors, subsidiaries, joint venturers, partners, employees, agents, attorneys, insurance carriers, heirs, predecessors, and representatives of each other Party, from all claims, demands, actions, and causes of action of whatever kind or nature, presently known or unknown,

arising out of or in any way connected with the lawsuit.

**TERM OF THE CONSENT DECREE AND ORDER:**

16. This Consent Decree and Order shall be in full force and effect for a period of forty-eight (48) months after the date of entry of this Consent Decree and Order, or until the injunctive relief contemplated by this Order is completed, whichever occurs later. The Court shall retain jurisdiction of this action to enforce provisions of this Order for forty-eight (48) months after the date of this Consent Decree, or until the injunctive relief contemplated by this Order is completed, whichever occurs later.

**SEVERABILITY:**

17. If any term of this Consent Decree and Order is determined by any court to be unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in full force and effect.

**SIGNATORIES BIND PARTIES:**

18. Signatories on the behalf of the parties represent that they are authorized to bind the parties to this Consent Decree and Order. This Consent Decree and Order may be signed in counterparts and a facsimile signature shall have the same force and effect as an original signature.

Dated: 3-26, 2013

PLAINTIFF PATRICIA BERNE

*Patty Berne* (signature)

PATRICIA BERNE

Dated: 5/11, 2013

DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

By: (signature)

Print name: NORMAN J. Hansell

APPROVED AS TO FORM:

-6-
CONSENT DECREE AND [PROPOSED] ORDER

Dated: __MARCH 26__ 2013

PAUL L. REIN
CELIA McGUINNESS
LAW OFFICES OF PAUL L. REIN

By: _____
Attorneys for Plaintiff
PATRICIA BERNE

DATED: __March 26__, 2013

MICHAEL D. BRUNO
GORDON & REES, LLP

By: _____
Attorneys For Defendant
THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA

**ORDER**

Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

Dated: __June 12__, 2013

_____
Honorable DONNA M. RYU
United States District Magistrate Judge

-7-

CONSENT DECREE AND [~~PROPOSED~~] ORDER

<u>Berne v. UC Regents</u>

Schedule of Remediation/Injunctive Relief at Zellerbach Hall at
The University of California, Berkeley

**Defendant represents that the following work has been completed:**

1. **Wheelchair Accessible Seats—Back Row:** Installed six ADA-compliant wheelchair accessible seats in back row, orchestra level;
2. **Wiring:** Installed subfloor "snake" (slot) so sound wires for soundboard do not protrude above aisle floor;
3. **ADA Compliant Workstation:** Upgraded orchestra level soundboard workstation to be ADA compliant;
4. **Path of Travel to Back Row Seating:** Eliminated variations in level of back corridor floor (which runs behind back row of seats on orchestra level);
5. **Lighting:** Installed lighting along back corridor;
6. **New Ramp:** Installed a new permanent exterior ramp at main entrance providing ADA compliant path of travel to eight entrance doors and ticket office;
7. **Entrance:** Eliminated door stops on strike plates of eight main exterior entrance doors, replaced door closers and adjusted door pressure to be less than five pounds and adjusted closing times to over five seconds (on all eight orchestra level exterior entrance doors);
8. **Automatic Door Opener:** Installed automatic door opener for ticket office entrance;
9. **Guardrails:** Installed guardrails under both lobby stairs leading to mezzanine
10. **Women's Restroom:** Reconfigured side-transfer stall in orchestra level women's restroom;
11. **Improvement for Sight-Impaired:** Installed a "skirt" to eliminate potential barrier of protruding drinking fountain in orchestra level lobby;
12. **Mezzanine Level Doors from Lobby to Auditorium:** Adjusted door closers from mezzanine lobby to mezzanine seats so that the door requires less than five pounds pressure to operate and closes no faster than five seconds
13. **Parking:** Restriped the lower garage disabled person parking spaces.
14. **Temporary Modular Aluminum Ramp from Lower to Upper Sproul Plaza:** Reconfigured the temporary ramp and agreed to retain this configuration until the Lower Sproul Plaza renovation has addressed access from Lower Sproul Plaza.
15. **Public Entrance to Hall, Bank of Eight Exterior Doors on East Side:** Replaced all eight existing door closer hardware with new design, and subsequently adjusted all doors to operate with a maximum five-pound push pressure and to close in no faster than five seconds. Removed the door stops from the bottom of the doors and agreed to maintain these conditions by checking the door pressure and closing speed not less frequently than every six months.

16. **Orchestra Level Doors from Lobby to Auditorium:** Replaced all existing door closer hardware with new design, and subsequently adjusted all doors to operate with a maximum five-pound push pressure, to close in no faster than five seconds, and agreed to maintain these conditions by checking the door pressure and closing speed not less frequently than every six months.

17. **Elevator to the Mezzanine:** Installed a tactile star on the elevator door jamb, and agreed to implement a written policy to provide the interior dimensions of the elevator to purchasers of wheelchair seating on the mezzanine. The dimensions will also be stated on the Zellerbach ticketing website.

18. **Women's Restrooms at the Orchestra level**: Modified the sink counter height.

19. **Men's and Women's Restrooms on the Mezzanine Level:** Installed accessible toilet stall door hardware and adjusted the exterior door pressure to be ADAAG compliant.

20. **Drinking Fountains at Balcony Lobby Cafe :** Installed two sets of wing-walls on the two existing drinking fountains located on each side of the cafe.

21. **Dining Area Seating:** Installed two wheelchair-accessible tables and marked them with the universal symbol of accessibility.

**Work to be Completed By March 15, 2013**:

1. **South Ramp from Bancroft Way:** Install directional signage to the accessible path of travel at major junctions where the accessible route of travel diverges from the regular circulation path.

**Work to be Completed By December 31, 2013**:

1. **Mezzanine Entrances to Seating:** Install one electric door opener at the Mezzanine level.
2. **Men's restrooms on the Orchestra level**:

i. Install 12" equilateral triangle sign at entrance to restroom

(1) In the accessible toilet compartment:

    ii. install pull hardware
    iii. adjust door operation so that it closes automatically
    iv. move the door to the stall approximately 11" laterally
    v. reposition side grab bar
    vi. relocate the toilet paper dispenser to under the grab bar
    vii. replace the toilet with one that is 17" to 19" high
    viii. lower soap dispenser 3"

3. **<u>Accessible Path of Travel to Front Row Orchestra Seats:</u>**  Construct an accessible path of travel between the outer doors and the front seats in the lower Orchestra section.

4. **<u>Wheelchair Seats at Lower Orchestra Level:</u>**  Reconfigure seating to provide six wheel-chair accessible seats in the lower Orchestra section in substantial conformity with Exhibit A (CAW Architects drawing, Sheet A2.07).

5. **<u>Removable or Folding Armrests—Orchestra Section:</u>**  Confirm that a total of ten aisle seats, dispersed through the orchestra section, have removable or folding armrests on the aisle side of the seat.  Each seat shall be identified with the universal symbol of accessibility.

6. **<u>Signage at Ticket Office:</u>**  Post signage at the ticket office and on the ticketing website identifying the wheelchair accessible seats and the seats with adjustable armrests

| HIGHLIGHTED SEAT COUNT: ROWS A,B,C,G & H | |
|---|---|
| FLOOR MOUNTED FIXED CHAIRS | 83 |
| FIXED CHAIRS ON MOVABLE BASES | 0 |
| TOTAL FIXED CHAIRS | 83 |
| LOOSE CHAIRS | 0 |
| WHEELCHAIR POSITIONS | 6 |
| TOTAL SEAT COUNT | 89 |

| | |
|---|---|
| CHAIRS TO BE REMOVED | -12 |
| CHAIRS TO BE ADDED | +17 |
| TOTAL | +5 |
| TOTAL FIXED CHAIRS: | 88 |

## GENERAL NOTES

1. THIS (E) DRAWING HAS BEEN DEVELOPED FROM 'AS BUILT' DOCUMENTATION PROVIDED TO THE ARCHITECT BY UNIVERSITY OF CALIFORNIA CAPITAL PROJECTS, FROM FIELD MEASUREMENTS, AND FROM MANUFACTURER'S SHOP DRAWINGS FROM THE 2005 ZELLERBACH SEATING REPLACEMENT PROJECT. AS SUCH, THIS DRAWING IS NOT GUARANTEED TO BE ACCURATE OR TO SCALE. FIELD VERIFY ALL DIMENSIONS AND CONDITIONS PRIOR TO BEGINNING WORK AND NOTIFY ARCHITECT OF ANY DISCREPANCIES. DO NOT SCALE DRAWINGS.

2. COUNTS AND DIMENSIONS FOR (E) FIXED CHAIRS HAVE BEEN DEVELOPED FROM: DATA PROVIDED IN MANUFACTURER'S SHOP DRAWINGS FROM THE 2005 ZELLERBACH SEATING REPLACEMENT PROJECT. MANUFACTURER SHALL PROVIDE FIELD MEASURED SEATING LAYOUTS WITH FINAL SEAT COUNTS.

## SHEET NOTES

NOTES NOT KEYED ON THE DRAWINGS ARE APPLICABLE TO THE ENTIRE SHEET.

S1. REVISE SEATING LAYOUT FOR ROWS A, B, C, G AND H AS INDICATED USING (E) SEATING COMPONENTS TO THE EXTENT POSSIBLE. UTILIZE (E) COMPONENTS IN BEST CONDITION FIRST. IF CONDITION OF ANY REQUIRED COMPONENT IS SUBSTANDARD AS COMPARED TO QUALITY LEVEL OF (E) STOCK, REFURBISH OR PROVIDE NEW COMPONENT.

S2. ANY NEW COMPONENTS OR COMPONENTS REQUIRING REPLACEMENT SHALL MATCH EXISTING.

S3. PROVIDE NUMBER AND LETTER PLATES FOR ROW AND SEAT DESIGNATIONS TO MATCH EXISTING AS REQUIRED.

S4. NEW AISLE AND CROSS-AISLE LIGHTING SHALL MATCH EXISTING IN APPEARANCE, PLACEMENT, AND COLOR TEMPERATURE AND SHALL MEET ALL APPLICABLE CODE REQUIREMENTS. SEE ELECTRICAL DRAWINGS.

S5. PROVIDE MOVEABLE BASES FOR FIXED CHAIRS IN INDICATED AREAS.

S6. LOOSE CHAIRS (BY OWNER) CAN BE PROVIDED IN WHEELCHAIR POSITIONS AND MANEUVERING AREAS AS SHOWN IN DRAWING 2 IN THE EVENT THESE ARE NOT NEEDED BY PATRONS IN WHEELCHAIRS. LOOSE CHAIRS SHOULD BE STACKABLE AND EQUIPPED WITH GANGING DEVICES TO SECURE THEM TOGETHER AS REQUIRED BY CODE. TO ENSURE SIGHTLINES, LOOSE CHAIRS SHOULD BE PROVIDED WITH DIFFERENT SEAT HEIGHTS, 18", 24", AND 30" AS INDICATED.

## SEATING COMPONENTS

HIGHLIGHTED SEATS: ROWS A,B,C,G & H
COMPONENT SUMMARY:

| ITEM | QTY |
|---|---|
| FIXED THEATRE CHAIRS | |
| 20" CHAIR | 10 |
| 21" CHAIR | 57 |
| 22" CHAIR | 8 |
| 23" CHAIR | 8 |
| TOTAL FIXED CHAIRS | 83 |
| OTHER SEATING COMPONENTS | |
| END STANDARD PANEL/ARMREST | 36 |
| END STANDARD PANEL/ADA ARMREST | 0 |
| CENTER STANDARD/ARMREST | 67 |
| ARMREST AISLE LIGHT | 18 |
| POSSIBLE WHEELCHAIR POSITIONS | 6 |

## SEATING LEGEND

- FIXED THEATRE CHAIR
- CHAIR WIDTH
- AISLE END ARMREST & STANDARD W/ END PANEL & ROW DESIGNATION LABEL
- SEAT NUMBER DESIGNATION
- CENTER ARMREST & STANDARD
- CONCEALED AISLE LIGHT INTEGRATED UNDER AISLE-END ARMREST
- ADA APPROVED ACCESSIBLE ARMREST AT AISLE-END STANDARD
- WHEELCHAIR SPACE W/ FIXED COMPANION SEAT

---

**CODY ANDERSON WASNEY ARCHITECTS**

Cody Anderson Wasney Architects, Inc.
455 Lambert Avenue • Palo Alto, CA 94306
650.328.1818 • Fax 328.1888
Copyright © 2010 by CODY ANDERSON WASNEY ARCHITECTS, INC.

STAMP

CONSULTANTS

| REVISION | DATE |
|---|---|
| DESIGN DEVELOPMENT SET | 01/14/2013 |

**PROJECT NAME**
ACCESS IMPROVEMENT PROJECT FOR
**ZELLERBACH HALL**
UNIVERSITY OF CALIFORNIA, BERKELEY
BERKELEY, CA 94720

**SHEET TITLE**
LEVEL 3: FRONT ORCHESTRA:
SEATING PLAN

| | |
|---|---|
| PROJECT NO. | 12030 |
| DRAWN BY | M. DESING |
| CHECKED BY | C. WASNEY, K. ABIKO |

**SHEET**
# A2.07

---

**LEVEL 3 FRONT ORCHESTRA: SEATING PLAN**
SCALE: 1/4" = 1'-0"

(1) TRUE NORTH

Key labels on plan: ROW B/ ACCESSIBLE ROW, ORCHESTRA LEVEL REMOVABLE CHAIR ZONE (EL. +33'-3"), PIT LIFT, STAGE PLATFORM (EL. +36'-9"), NO CHANGES TO (E) SEATING ROWS D, E, F, NO CHANGES TO (E) SEATING ROW D AND ABOVE, (ROW H: EL. +34'-6 3/4"), (ROW G: EL. +34'-4"), (ROW C: +33'-7 1/2"), CENTER AISLE